1  ARAVIND SWAMINATHAN (*admitted pro hac vice*)
   aswaminathan@orrick.com
2  MICHELLE VISSER (STATE BAR NO. 277509)
   mvisser@orrick.com
3  REBECCA HARLOW (STATE BAR NO. 281931)
   rharlow@orrick.com
4  THOMAS FU (STATE BAR NO. 325209)
   tfu@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   701 Fifth Avenue
6  Suite 5600
   Seattle, WA  98104-7097
7  Telephone:    +1 206 839 4300
   Facsimile:    +1 206 839 4301
8
   Attorneys for Defendants
9  BLOCK, INC. and CASH APP INVESTING, LLC

10                   UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12

13
   MICHELLE SALINAS and RAYMEL          Case No. 3:22-cv-04823-JSC
14 WASHINGTON, individually and on behalf of
   all others similarly situated,       **REPLY IN SUPPORT OF MOTION TO**
15                                       **CONSOLIDATE**
                Plaintiffs,
16                                       Date:  Jan. 19, 2023
                                         Time:  9:00 a.m.
17          v.                           Courtroom:  8
                                         Judge:  Hon. Jacqueline Scott Corley
18 BLOCK, INC. and CASH APP INVESTING,
   LLC,
19
                Defendants.
20                                       Case No. 3:22-cv-06787-JSC

21 AMANDA GORDON, individually and on
   behalf of all others similarly situated,
22
                Plaintiff,
23
   v.
24
   BLOCK, INC., and CASH APP INVESTING,
25 LLC,

26              Defendants.

27

28

1    The crux of Plaintiff Amanda Gordon's Opposition ("Opp'n") to the instant motion to

2    consolidate is that, while her case, *Gordon v. Block, Inc. and Cash App Investing LLC*, Case No.

3    22-cv-6787 ("*Gordon*"), and *Salinas v. Block, Inc. and Cash App Investing LLC*, Case No. 22-cv-

4    4823 ("*Salinas*") "may bear vague similarities," the two actions are, in fact, "substantially

5    different."  Opp'n at 1, 3.  Plaintiff Gordon argues that the December 2021 data security event is

6    "mere background" in *Gordon*, whereas the December 2021 data security event is the "sole[]" focus

7    of *Salinas*.  Opp'n at 1.  The essence of Plaintiff Gordon's Opposition is that the cases are not

8    identical and therefore cannot be consolidated.

9    This is wrong as a matter of law and as a matter of common sense.  First, as a matter of law,

10   under Federal Rule of Civil Procedure 42(a), this Court may consolidate actions that "involve a

11   common question of law or fact."  This case plainly meets that standard; both cases share common

12   questions relating to the underlying December 2021 data security event, including, without

13   limitation, whether plaintiffs in either *Gordon* or *Salinas* suffered any actual injury, whether, if they

14   did, the incident was the proximate cause of their injury, and the underlying factual predicate for

15   any alleged injuries.

16   As a matter of common sense, it does not take a close read of either the *Gordon* or the

17   *Salinas* complaints to see that the December 2021 data security event lies at the very heart of both

18   cases.  Indeed, it is hard to imagine that there would be a *Gordon* complaint without the December

19   2021 data security event, both with respect to timing (it was filed after the event was disclosed in

20   April 2022), and with respect to her alleged injury.  While word count is not everything, it is notable

21   that the December 2021 data security event is mentioned no fewer than 52 times in the *Gordon*

22   complaint, and the December 2021 data security event stands alone at the center of Plaintiff

23   Gordon's alleged injury.

24   The point and purpose of consolidation is to avoid unnecessary cost, preserve judicial

25   resources, and ensure consistent results for cases which "involve a common question of law or

26   fact."  Fed. R. Civ. Proc. 42(a); *see also April in Paris v. Becerra*, 494 F. Supp. 3d 756, 771 (E.D.

27   Cal. 2020); *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018)

28   (Tigar, J.).  Both at a surface level and on a close read, it is clear that the *Gordon* and *Salinas*

REPLY IN SUPPORT OF
MOTION TO CONSOLIDATE
3:22-cv-04823-JSC

complaints meet the standard of Rule 42 and that consolidation would streamline costs, preserve judicial resources, and eliminate duplicative litigation.  As such, Block respectfully requests that the Court consolidate the *Gordon* and *Salinas* complaints to allow this case to efficiently move forward.

**I.      Plaintiff Gordon's Case Is About the December 2021 Data Security Event**

Plaintiff Gordon primarily attempts to distinguish the cases by arguing that *Salinas* is <u>about</u> the December 2021 data security event, while her case only <u>mentions</u> the event.  Specifically, she contends:

- that her case is *actually* about deficient security in the Cash App application, not about the December 2021 data security event at all, characterizing it as "mere background information."  Opp'n at 1;

- that her "causes of action are not dependent on nor structured around the Data Breach," *id.*, and that "[t]he focus of the [*Gordon*] Complaint and gravamen of the allegations is Defendants' deficient mobile application."  *Id.* at 2; and

- that "[t]he *Salinas* Action would not exist without the occurrence of the Data Breach," while "Plaintiff Gordon's lawsuit, on the other hand, would survive even without the occurrence of the Data Breach."  *Id.* at 4.

Each of these contentions is contradicted by the complaint that she herself filed, in which she alleges that she and the putative class suffered harm because their information was compromised in the December 2021 data security event.

While far from an exhaustive list, the following excerpts[1] from Plaintiff Gordon's complaint demonstrate just how central the December 2021 data security event is to the *Gordon* complaint:

- "Defendants failed to take reasonable steps to safeguard consumer information in connection with a December 2021 data breach (the "Data Breach") that resulted in the unauthorized public release of PII of 8.2 million current and former Cash App Investing customers, including Plaintiff's and Proposed "Class" (defined below) members' full names and brokerage account numbers (which are the personal identification numbers associated

---

[1] Defendants do not intend to imply that any of the allegations are true, only to point out their content and the similarities between the two complaints.

REPLY IN SUPPORT OF
MOTION TO CONSOLIDATE
3:22-cv-04823-JSC

with Cash App customers' stock activity on the Cash App investing platform), the value and holdings of brokerage portfolios, and trading activity." Gordon Compl. ¶ 4.

- "Following Defendants' negligence which resulted in her PII being accessed and/or stolen *during the 2021 Data Breach*, Plaintiff received multiple notices from credit monitoring services and even the Internal Revenue Service that bad actors had made use, and/or attempted to use, her PII. *As a result of the breach*, Plaintiff has been forced to lock her credit, spend time researching and responding to fraudulent transactions, spend time in an attempt to obtain reimbursement for fraudulent transactions, change her information on her other accounts, reset billing instructions tied to her Cash App account, and deal with false entries on her credit report. In addition, *the Data Breach* impacted her credit score and has made it difficult, and at times impossible, to access credit and benefits she was able to access prior to *the Data Breach*." Gordon Compl. ¶ 14 (emphasis added).

- "Defendants failed to provide timely notice [of the Data Breach] and when notice was issued, it was woefully insufficient." Gordon Compl. ¶ 37.

- "By intentionally failing to disclose the Data Breach in a timely manner, Defendant misled consumers into continuing to use Defendants' services, thus providing Defendants with a continuous stream of income." Gordon Compl. ¶ 38.

- "The Data Breach happened because Defendants failed to take reasonable measures to protect the Class's PII that Defendants had collected, stored, and were responsible for protecting." Gordon Compl. ¶. 40.

- "The Data Breach was a direct and proximate result of Defendants' failure to: (a) properly safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' PII; and (c) protect against reasonably foreseeable threats to the security or integrity of such information." Gordon Compl. ¶ 59.[2]

- "Defendants had the resources necessary to prevent the Data Breach, but neglected to implement adequate data security measures, despite its obligations to protect customers' PII, and despite its Privacy Notice." Gordon Compl. ¶ 61.[3]

- "Had Defendants remedied the deficiencies in its data security training and protocols and adopted security measures recommended by experts in the field, they would have prevented the intrusion leading to the theft of PII." Gordon Compl. ¶ 62.[4]

Here, the "intrusion" referenced is the December 2021 data security event.

- "As a direct and proximate result of Defendants' wrongful omissions, negligence, actions and inactions, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands,

---

[2] As but one example of the similarities between them, this paragraph appears almost verbatim in the *Salinas* complaint. *See Salinas* Compl. ¶ 83.

[3] *See Salinas* Compl. ¶ 84.

[4] *See Salinas* Compl. ¶ 85.

such as work and family, to mitigate the actual and potential impact of the Data Breach on their lives.*"  Gordon Compl. ¶ 63.[5]

- "**Commonality and Predominance**. Common questions of law and fact exist as to all proposed Class Members and predominate over questions affecting only individual Class Members. These common questions include: . . . Whether Plaintiff and the Class are at an increased risk for identity theft because of the Data Breach . . . ." Gordon Compl. ¶ 74(e).

Moreover, contrary to Plaintiff Gordon's arguments, her lawsuit could not possibly survive in its current state without the December 2021 data security event because her causes of action repeatedly depend on it[6]:

- **Negligence**: "Defendants' own conduct also created a foreseeable risk of harm to Plaintiff and Class Members and their PII. Defendants' misconduct included failing to implement the necessary systems, policies, employee training, and procedures necessary to prevent the Data Breach." Gordon Compl. ¶ 85.  "Defendants breached its duties to Plaintiff and Class Members by failing to . . . safeguard the PII of Plaintiff and Class Members.  Gordon Compl. ¶ 85.

  The only particular compromise of PII Plaintiff Gordon alleges in her complaint is the December 2021 data security event.[7]

- **California Consumer Legal Remedies Act**: "Plaintiff and Class Members were harmed as a result of Defendants' violations of the CLRA because their PII was compromised, placing them at a greater risk of identity theft." Gordon Compl. ¶ 85.

  Again, the only particular compromise of PII Plaintiff Gordon alleges in her complaint is the December 2021 data security event.

- **Fraud by Omission:** "As a result of the foregoing, Plaintiff and the Class sustained damages when the 2021 Data Breach occurred, as alleged herein."  Gordon Compl. ¶ 113.

  The December 2021 data security event is the basis for this cause of action.

- **Deceit by Concealment**: "Because of Defendants' deceit, (1) the PII and financial information of Plaintiff and the Class was compromised . . . ." Gordon Compl. ¶ 120.

  Again, the only particular allegation that data was compromised is the December 2021 data security event.

---

[5] *See* Salinas Compl. ¶ 86.

[6] Defendants dispute that Plaintiff Gordon has stated any claims that could survive dismissal on the pleadings, even with her allegations regarding the December 2021 data security event.  As the following excerpts show, however, her claims indisputably depend on that event.

[7] While Plaintiff Gordon alleges that the App was subject to other "hacking incidents," she does not allege that any of them involved the compromise of PII.  Nor does she allege that she was ever subject to any such incidents.  As to Plaintiff Gordon, accordingly, it is clear that the only compromise of PII that she alleges she experienced was in connection with the December 2021 data security event.

- **Negligent Misrepresentation**: "This assertion is false because if Defendants had taken reasonable precautions to protect consumers' PII, its security system would not have been the subject of a Data Breach in 2021, nor would it have been subject to prior hacking incidents as specified above."  Gordon Compl. ¶ 125.  "As a result of Plaintiff's and the Class Members' reliance on the Defendants' negligent misrepresentations, Plaintiff and the Class Members sustained damages in the form of their PII being exploited, misused, and stolen. This is evidenced by the December 2021 Data Breach."  Gordon Compl. ¶ 129.

Again, the December 2021 data security event is the basis for this claim.

- **Breach of Implied Contract**: "Defendants breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' PII.  Gordon Compl. ¶ 140.

Again, the only particular compromise of PII Plaintiff Gordon alleges in her complaint is the December 2021 data security event.

- **Breach of Confidence**: "Defendants' Data Breach was the direct and legal cause of the theft of Plaintiff and Class Members' PII, as well as the resulting damages."  Gordon Compl. ¶ 153.

Here the complaint, again, points to the December 2021 data security event as the express basis of her cause of action.

- **Invasion of Privacy**: "The Data Breach, which was caused by Defendants' negligent actions and inactions, constitutes an intentional interference with Plaintiff and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person."  Gordon Compl. ¶ 165.

The December 2021 data security event is the basis too of this cause of action.

- **Breach of Fiduciary Duty**: "Defendants further breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely detect the Data Breach and notify and/or warn Plaintiff and Class Members of the Data Breach."  Gordon Compl. ¶ 178.

The basis for the purported breach is an alleged failure to "timely detect" the December 2021 data security event.

Plaintiff Gordon's own complaint thus belies her insistence that while this case "may look facially similar" to the *Salinas* case "a close inspection" would reveal the differences.  Opp'n at 4.  To the contrary, close inspection reveals that they, in fact, raise substantially identical questions of law and fact that warrant consolidation.  Indeed, Plaintiff Gordon herself identifies *just* five paragraphs in her complaint that do not appear in the Salinas complaint, *see* Opp'n at 4, underscoring just how similar the cases truly are and how much Plaintiff Gordon is stretching to distinguish them.

    That is unsurprising.  The truth is that both cases arise out of—and indeed, are centered on—the December 2021 data security event.  It is hard to imagine Plaintiff Gordon's complaint

1    without that event—all that would be left would be a generalized claim relating to Cash App's data

2    security practices, untethered to any claim of harm.  That is, she makes no allegation that inadequate

3    security of the Cash App application led to any losses or harms to her.  *See* Gordon Compl. ¶ 4

4    (alleging that Plaintiff and the proposed class were affected by the December 2021 data security

5    event).  And so her assertion that "[m]any Cash App users have complained about this exact

6    problem [of hacking of individual accounts] claiming money has disappeared from their accounts,"

7    Opp'n at 2, is entirely irrelevant to her, as Plaintiff Gordon does not allege that she is among that

8    group.  Nor does Plaintiff Gordon get any further in her attempt to distinguish her case from *Salinas*

9    by arguing that the *Gordon* case "focuses on issues pre-dating the Data Breach" while the *Salinas*

10   case does not.  Again, this argument does not hold up when looking at the two complaints; both

11   allege that there were security deficiencies in Cash App *systems* that led to the December 2021 data

12   security event.  *Compare* Salinas Compl. ¶¶ 31–32, 36–50 *with* Gordon Compl. ¶¶ 4, 40–54.

13   **II.    Consolidation Is Appropriate.**

14          Where two cases involve a common question of law or fact, the consolidation inquiry

15   involves a weighing of the efficiency to be gained against the "delay, confusion, [or] prejudice"

16   that would result.  *See Hessefort*, 317 F. Supp. 3d at 1060.  That weighing here clearly comes out

17   in favor of consolidation.  Duplicative litigation of many of the same claims arising out of the same

18   facts would be an unnecessary drain on the resources and time of the parties and of the Court and

19   there is no threat of delay, confusion, or prejudice that would make consolidation inappropriate.

20   Nothing in the Opposition compels a different conclusion.

21          First, Plaintiff Gordon's argument appears to be premised upon the idea that cases do not

22   involve common questions of law and fact, unless they are identical.  For instance, she points out

23   five causes of action that are "uniquely assert[ed]" in her complaint, glossing over the fact that six

24   causes of action are identical.  *See* Opp'n at 3; *but see* Defs.' Mot. at 4 (identifying ovelapping

25   claims).  She calls the "key distinguishing factor between the lawsuits her causes of action for

26   "fraud by omission, deceit by concealment, and negligent misrepresentation," which she contends

27   "may have been exacerbated by the Data Breach, but they do not stem from the Data Breach itself."

28   Opp'n at 4.  As discussed above, that simply is not the case; the December 2021 data security event

REPLY IN SUPPORT OF
MOTION TO CONSOLIDATE
3:22-cv-04823-JSC

is at the heart of each of the causes of action alleged in the *Gordon* complaint.  Moreover, while the *Salinas* plaintiffs do not assert the exact same claims that Plaintiff Gordon does, they do allege that Defendants made certain misrepresentations and omissions regarding their protection of personal information and assert statutory claims that are similar to Plaintiff Gordon's common-law claims.  *See* Salinas Compl. ¶¶ 33–35, 194, 205, 215.  Even if Plaintiff Gordon correctly stated the facts—she has not—the standard for consolidation is not whether two (or more) plaintiffs have chosen to plead the exact same causes of action relating to the "same common question of law or fact" under Rule 42(a), but rather whether the cases share a common question of law or fact and the interest in judicial efficiency justifies treating the two cases as one.  *See Indiana State Dist. Council of Laborers & Hod Carriers Pension Fund v. Gecht*, 2007 WL 902554, at *1 (N.D. Cal. 2007) ("A common question or questions do not have to predominate. All that is required is that the district court find they exist and that consolidation will prove beneficial.").  The factual and legal issues underlying the allegedly distinct claims are similar and any differences between the lists of causes of action in the two complaints do not change that result.

Second, Plaintiff Gordon claims that the suits should be kept distinct because the plaintiffs seek to represent different classes.  Opp'n at 5.  She concedes, as she must, that many individuals are within the scope of both classes – Plaintiffs Washington and Salinas would be in Gordon's class, and vice versa – but asserts that the imperfect overlap precludes consolidation.  *Id.*  In doing so, she again mischaracterizes her own complaint and again incorrectly assumes that cases must be identical to be consolidated.  While Plaintiff Gordon argues that her proposed classes cover any individuals who may have been impacted in any way by Defendants' alleged "negligence prior to and after the Data Breach," *id.*, the proposed class definitions in the *Gordon* action are in fact limited to individuals "who have had their PII compromised."  Gordon Compl. ¶ 70.  In *Salinas*, the nationwide class and statewide subclasses comprise those "whose Private Information was compromised because of the Data Breach."  Salinas Compl. ¶ 94.  Plaintiff Gordon hangs her hat on the "because of the Data Breach" limitation in *Salinas*, but that is a distinction without a difference because Plaintiff Gordon does not allege any compromises of PII other than the December 2021 data security event.  Indeed, this purported distinction between the two putative

REPLY IN SUPPORT OF
MOTION TO CONSOLIDATE
3:22-cv-04823-JSC

classes collapses on itself given that the *Gordon* complaint makes clear that the alleged commonality among the putative class members is that they were affected by the December 2021 data security event. *See, e.g.*, Gordon Compl. ¶¶ 4, 5, 40, 59, 63, 113,153. Underscoring this point, Plaintiff Gordon identifies as a question common to the putative class "[w]hether Plaintiff and the Class are at an increased risk for identity theft **because of the Data Breach**." Gordon Compl. ¶ 74(e) (emphasis added). If the putative class was actually as broad as Plaintiff Gordon claims in her Opposition, that question would not have a common answer. Even if the overlap were imperfect, moreover, the alleged overlap of 8.2 million individuals would counsel in favor of consolidation.

Finally, the Opposition also contends that discovery will be significantly different in the two cases, which is again belied by the pleadings. Both complaints assert security deficiencies prior to the December 2021 data security event, both assert that Defendants made misrepresentations and omissions regarding data security prior to the December 2021 data security event, and both assert that the plaintiffs had their information affected by that event. For instance, both complaints contain substantially similar sections in their factual background sections that will most likely give rise to substantially similar topics and scopes of inquiry. Gordon alleges that "*Defendants Have Failed to Implement Reasonable Security Measures*" (Gordon Compl. ¶¶ 42–48), while the *Salinas* plaintiffs claim that "*Defendants Failed To Maintain Reasonable and Adequate Data Security Measures to Safeguard Customers' Private Information*" (Salinas Comp. ¶¶ 36–50). Both complaints include a section titled "*Defendants Failed to Comply with FTC Guidelines*" (Gordon Compl. ¶¶ 49–54; Salinas Compl. ¶¶ 64–69) and the allegations in that section are almost word-for-word the same.[8]

Discovery in both cases can be expected to focus on Defendants' security in the time leading up to the December 2021 data security event, Defendants' representations to customers regarding security leading up to the December 2021 data security event, and Defendants' response to the December 2021 data security event. Given the pleadings, Plaintiff Gordon makes no effort to

_____

[8] Gordon Compl. ¶¶ 49–50 are identical to Salinas Compl. ¶¶ 65–66 and there are only minor variations between Gordon Compl. ¶¶ 52–54 and Salinas Compl. ¶¶ 67–69.

1    explain how her case will necessitate different "evidence, issues, discovery, time-period, and

2    witnesses." Opp'n at 5. She does not, because she cannot. That is telling, and a strong basis to

3    reject her attempt to litigate these cases separately.

4    **III.    Courts Consistently Grant Consolidation in Cases Like This**

5           The court in *April in Paris* reasoned that consolidation was appropriate because "[b]oth

6    actions turn on identical questions of law" regarding preemption of a provision of the California

7    Penal Code and whether that provision violated the dormant commerce clause, and "seek the same

8    relief," a declaration of the invalidity of the statute and injunction against its enforcement. 494 F.

9    Supp. 3d at 772. Similarly, the shareholder plaintiffs in *Hessefort* brought separate cases with

10   substantial "factual and legal overlap," such that "judicial convenience and a just resolution of the

11   parties' claims would be best served through consolidation." 317 F. Supp. 3d at 1060. And cases

12   do not need be identical or nearly identical for consolidation to be appropriate. In a decision

13   consolidating two patent cases, the court concluded that judicial efficiency would be served by

14   consolidating two cases that would require the court to construe and determine the validity of the

15   same three patents and require the jury to understand the same technology, even though one of the

16   cases also involved an additional patent and a related technology. *Paxonet Commc'ns, Inc. v.

17   TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1029 (N.D. Cal. 2003) (Wilken, J.); *see also In re Oreck

18   Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 490 (C.D. Cal.

19   2012) (consolidating six class actions where "the gravamen of each action is that Oreck misled

20   consumer into purchasing products that did not perform as advertised" even though "the technology

21   underlying the Halo vacuums and air purifiers is different").

22          Indeed, the authorities that Plaintiff Gordon cites demonstrate how the kind of differences that

23   may counsel against consolidation are facially distinguishable from this case:

24   •   In *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, the court

25        denied consolidation of two cases between the same parties involving two different patents

26        each relating to different technical processes. 1994 WL 167870779 (N.D. Cal. Apr. 14,

27        1994) (Whyte, J.). The judge reasoned that patent cases are confusing enough to jurors

28

REPLY IN SUPPORT OF
MOTION TO CONSOLIDATE
3:22-cv-04823-JSC

without combining the cases to include four different patents and three unrelated technologies.

- *Wright v. United States* involved injuries on different vessels operated by different carriers, with the only commonality being that both claims involved alleged negligence and the cases were filed nearly a year apart.  1993 WL 313040 (N.D. Cal. Aug. 6, 1993) (Caulfield, J.).

- Judge White granted a motion to sever in *Rosewolf v. Merck & Co.*, because the plaintiffs had been prescribed "Singulair, or its generic equivalent, at different times and used it for and at different periods of time," such that the case did not involve a single transaction conducive to consolidate treatment.  2022 WL 3214439, at *3 (N.D. Cal. Aug. 9, 2022) (White, J.).

- This Court declined consolidation in *Snyder v. Nationstar Mortgage LLC*, even though the same parties were involved in both suits, because the actions concerned different statutory claims arising from different residential mortgage loans connected with different properties and therefore lacked sufficient commonalities of law or fact and consolidation might cause confusion and prejudice.  2016 WL 3519181, at *2–3 (N.D. Cal. June 28, 2016) (Corley, Mag. J.).

- In *Farina Foccacia & Cucina Italiana, LLC v. 700 Valencia Street, LLC*, Chief Magistrate Judge Spero exercised his discretion to keep separate a breach of contract action and an unlawful detainer action involving the same parties since he saw no need to consolidate the distinct cases that were already related and before him.  2016 WL 524805, at *13 (N.D. Cal. Feb. 10, 2016) (Spero, Mag. J.).

- The denial of consolidation in *Sajfr v. BBG Communications, Inc.* was based primarily on procedural concerns – one case was newly filed and the other was six months older and had a pending summary judgment motion.  2011 WL 765884 (S.D. Cal. Feb. 25, 2011). Consolidation in that case would have introduced delays and inhibited the efficient resolution of the cases.

These cases are a far cry from the situation at hand.  Here, the central facts about Defendants' security and the December 2021 data security event are the same, unlike in *Applied Materials* and

1   *Rosewolf*.  The complaints were filed only weeks apart and are at the same stage procedurally,

2   unlike in *Safir* where consolidation would have caused substantial delay in the first case.  The

3   complaints here share substantially more than just involving negligence as in *Wright*, despite

4   Plaintiff Gordon's protestations to the contrary, or just involving the same parties as in *Snyder*.

5   And unlike *Farina Foccacia*, which involved two different cases with the same parties, here there

6   are two different parties with the same case.  It would be consistent with every one of Plaintiff

7   Gordon's cited authorities for this Court to grant consolidation.

8        Plaintiff Gordon claims that the *Gordon* and *Salinas* plaintiffs will suffer "prejudice" if the

9   cases are consolidated because they should be "allowed to structure their allegations to benefit each

10  of their proposed classes."  Opp'n at 2.  This argument proves too much; if that were the standard,

11  it is hard to imagine any cases ever being consolidated.  Rule 42(a)—which focuses upon common

12  questions of law or fact—governs consolidation, not how a given plaintiff chooses to "structure"

13  her allegations.  Even if this were sufficient to "prejudice" the *Gordon* plaintiffs—it is not—any

14  analysis of purported prejudice cannot end there, since the standard involves a weighing of

15  competing factors.  So, too, even if Plaintiff Gordon could identify actual prejudice—she cannot—

16  that prejudice by itself would not outweigh the efficiency benefits from consolidation nor the

17  burden on the defense and the Court that would result if the cases ran on parallel tracks with every

18  step duplicated.

19        It is clear from the Opposition that Plaintiff Gordon does not want her case consolidated

20  with *Salinas* and so is now splitting hairs, describing a case that she has not brought in a bid to keep

21  it separate, and threatening "a mistrial and appeals."  Opp'n at 7.  Under Rule 42 and the standard

22  for evaluating whether cases should be consolidated, this is not a close question; both cases plainly

23  "involve a common question of law or fact" and the efficiencies to be gained through consolidation

24  far outweigh any considerations to the contrary.

25  **IV.   Conclusion**

26        For the foregoing reasons, Defendants Block Inc. and Cash App Investing LLC respectfully

27  request that the Court consolidate the *Salinas* and *Gordon* actions.

28

REPLY IN SUPPORT OF
MOTION TO CONSOLIDATE
3:22-cv-04823-JSC

1

2      Dated: January 5, 2023                                    ARAVIND SWAMINATHAN
                                                                 MICHELLE VISSER
3                                                                REBECCA HARLOW
                                                                 THOMAS FU
4                                                                Orrick, Herrington & Sutcliffe LLP

5

6                                                                By:    /s/ Aravind Swaminathan
                                                                        ARAVIND SWAMINATHAN
7                                                                       Attorneys for Defendants
                                                                        BLOCK, INC. and CASH APP
8                                                                       INVESTING, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                 REPLY IN SUPPORT OF
                                                                 MOTION TO CONSOLIDATE
                                                                 3:22-cv-04823-JSC